UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

**Elizabeth Maier**                                                                                       **Civil Action No. 06-715**

**versus**                                                                                                      **Judge Tucker L. Melançon**

**Morgan Green, et al**                                                                              **Magistrate Judge Methvin**

## MEMORANDUM RULING

Before the Court is defendants' Motion for Summary Judgment [Rec. Doc. 8] and plaintiff's Opposition thereto [Rec. Doc. 18]. For the reasons set out below, defendants' Motion will be GRANTED.

### I. FACTUAL BACKGROUND

On April 9, 2005, a female victim ("Victim") of domestic violence presented to the Emergency Room of Lafayette General Medical Center ("LGMC") and was subsequently admitted. (*Plaintiff's Statement of Uncontested Facts,* #1). A nurse on duty called 9-1-1 to report the incident of domestic violence. (*Id.* at #2). Lafayette police officer Todd Borel was dispatched to LGMC for the purpose of investigating the domestic violence, where a nurse informed him that a woman had reported to the hospital with injuries that she said were caused by her husband. (*Defendants' Statement of Uncontested Facts,#'s* 4-6).

At that time plaintiff, Elizabeth Maier, was employed by Lafayette General Hospital in the capacity of case manager. (*Defendants' Motion,* Exhibit B: "Affidavit for Warrant of Arrest"). She was assigned to attend the Victim during the event at issue. When Officer Borel attempted to speak with the victim, Maier denied access. (*Defendants' Motion*, p. 7).

1

Even though she was informed that the Victim needed to be interviewed in reference to the crime, Maier refused to let Officer Borel speak with the Victim, blocking access to the Victim and threatening a lawsuit if he persisted in his efforts. (*Defendants' Statement,* #8; *Defendants' Motion,* Exhibit B ). Plaintiff claims that the police were advised that the Victim had asserted her right to privacy of medical treatment and that "all hospital personnel" informed the police that LGMC could not provide further information or access to the patient in the facility due to the legal restraints imposed by Health Insurance Portability and Accountability Act pf 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996). (*Plaintiff's Statement,* #s 3-4). When Officer Borel was prevented from reaching the Victim, he contacted Sergeant Morgan Green and reported that his access was blocked. (*Defendants' Statement,* #s 9-10).

Thereafter, Sergeant Green traveled to LGMC, where he explained to Maier that Louisiana law mandates an investigation of domestic violence cases and that the hospital personnel could not deny police access to a victim of a crime. (*Id.*). Despite this warning, Maier continued to block access to the victim, threatening a lawsuit if the police persisted. (*Id.,#'s* 11-14). Maier explains that she advised police of the Victim's right to privacy but never used or threatened force nor physically prevented the police officers from reaching the Victim. (*Plaintiff's Statement*, #'s 5-6).

Officer Borel and Sergeant Green (collectively, "police officers") spoke with the hospital attorney, Gordon Roundtree. (*Defendant's Motion,* p.2). Defendants posit that they understood that the Lafayette Police Department would be contacted when the Victim was

discharged and that Maier was told to contact the Department when the patient was discharged. (*Id.; also* Exhibit B). The Victim was eventually discharged into the care of her husband, in spite of the fact that he was her assailant and that she reported that she felt unsafe at home, without any notice being given to the Lafayette Police Department. (*Defendants' Statement* at 20-23). Maier states that she never promised to call the police nor was she ordered to do so by any supervisory personnel of LGMC. (*Id.*, # 7).

At that time, Sergeant Green initiated further investigative efforts. Assistant District Attorney Jay Prather issued a subpoena deuces tecum to obtain the Victim's records, which revealed injuries to the head, face and forearm. (*Id.* at 20-23). Sergeant Green believed that Maier's action obstructed and delayed the investigation of the domestic violence incident by preventing the police from interviewing the Victim and so obtaining information necessary to arrest the perpetrator. (*Id.* at 24). Accordingly, Sergeant Green presented an affidavit seeking a warrant for the arrest of Maier for obstruction of justice to Judge Phillis M. Keaty, 15th Judicial District Court, Lafayette Parish, Louisiana. (*Defendants' Motion,* Exhibit B: "Affidavit for Warrant of Arrest"). Based on a review of the affidavit, Judge Keaty issued a warrant for the arrest of Maier for obstruction of justice. (*Defendants' Motion,* Exhibit C: "Warrant").

On May 2, 2005, Maier was arrested and charged with obstruction of justice pursuant to the warrant. (*Defendants' Statement* at #'s 25-27). She was booked in the Lafayette Parish Prison. Ultimately, the District Attorney refused charges. (*Plaintiff's Statement,* at 10-11).

Maier filed the instant lawsuit pursuant to 42 U.S.C. 1983 against Officer Borel, Sergeant Green and the City Parish Government of Lafayette for false arrest in violation of her 4th, 6th and 8th Amendment rights claiming that the police officers abused their power "for personal reasons." (*Complaint;* also *Plaintiff's Opposition,* p.3). Specifically, plaintiff claims: 1.) defendants secured an arrest warrant and proceeded with booking despite the fact that the officers knew or should have known that Petitioner was acting in the course and scope of her employment, pursuant to the instructions of her employer and in compliance with the mandates of Federal Law, and the police officer's motive and purpose for making the arrest was solely to punish Petitioner for her "attitude" and the fact that she "embarrassed" them; 2.) defendants abused their authority in the planning and execution of the arrest warrant in a manner that would embarrass, humiliate and harass plaintiff, and without any lawful cause, by removing her from her workplace in the presence of co-employees and supervisors at Lafayette General Medical Center; 3.) the City-Parish Government of Lafayette, Louisiana does not maintain department policies to prevent officers from responding to personal affronts under color of law, and has no policy of education and counseling directed at assisting police in objectifying their job experiences to prevent emotional responses that cause damage to citizens. (*Complaint.*) Plaintiff asks for a monetary judgment for specific damages in the sum of $170,000.00 plus interest and with costs and attorneys fees as provided by law.(*Id.*).

Defendants request summary judgment dismissing all claims against them on the grounds that they had probable cause and a valid arrest warrant to effectuate the arrest of

Maier, whose actions were neither justified nor excused by HIPAA, so there is no basis for suit against them. (*Defendants' Motion,* p. 6). "Once probable cause has been established, a law enforcement officer cannot be held liable for false arrest or a civil rights violation." (*Id.*) (citing *Hunter v. Clardy,* 558 F.2d 290 (5th Cir. 1977); *Atkins v. Lanning,* 556 F.2d 485 (10th Cir.1977); *Perry v. Jones,* 506 F.2d 778 (5th Cir. 1975))).

In response, plaintiff alleges that probable cause did not support the arrest of Maier because her actions were not in violation of the Louisiana statute on Obstruction of Justice, LSA R.S. 14:130.1 under which she was arrested. (*Plaintiff's Opposition,* p. 5). Also, although defendants do not raise the affirmative defense of qualified immunity under the "break in causation" theory, plaintiff argues that the existence of a warrant does not shield defendants from liability because Green did not tell Judge Keaty all of the pertinent facts. "When an officer does not frankly convey all of the material facts to the magistrate, the issuance of the warrant is tainted and is not a basis for immunity." (*Id.*)(citing *Murray v. Earle,* 405 F.3d 278 (5th Cir. 2005).

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with

evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id*. If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[1] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th

---

[1] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56©; *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. LAW & ANALYSIS

The Fourth Amendment protects individuals from unfounded arrests by requiring reasonable grounds, or "probable cause," to believe a crime has been committed. *See Street v. Surdyka,* 492 F.2d 368, 372 (4th Cir.1974); *Casanova v. City of Brookshire,* 119 F.Supp.2d 639, 651 (S.D.Tex. 2000). Because a claim of false arrest implicates the Fourth and Fourteenth Amendments it is, therefore, actionable under 42 U.S.C. 1983 ("§1983"). *See Sorenson v. Ferrie,* 134 F.3d 325, 328 (5th Cir.1998); *Eugene v. Alief Indep. Scb. Dist.,* 65 F.3d 1299, 1305 (5th Cir. 1995), *cert denied,* 517 U.S. 1191 (1996); *Sanders v. English,* 950 F.2d 1152, 1159 (5th Cir.1992); *Thomas v. Kippermann,* 846 F.2d 1009, 1011 (5th Cir.1988). To prevail on §1983 action for false arrest, the plaintiff must prove that the officers lacked probable cause to arrest him. See *Hightower v. Schaubhut* 1990 WL 58129, 2 (E.D.La.1990)(citing *Hinshaw v. Doffer,* 785 F.2d 1260, 1266 (5th Cir.1986)). There is no

cause of action for false arrest under § 1983 unless the arresting officer lacked probable cause, or to put another way, "[I]f there was probable cause for the arrest, a claim for false arrest is not viable." *Casanova v. City of Brookshire,* 119 F.Supp.2d 639, 651 (S.D.Tex. 2000); *citing Sorenson v, Ferrie,* 134 F.3d 325, 329 (5th Cir. 1998); *United States v. Wadley,* 59 F.3d 510, 512 (5th Cir.1995), *cert. denied,* 519 U.S. 895, 117 (1996); *Wells v. Bonner,* 45 F.3d 90, 95 (5th Cir.1995); *Fields v. City of South Houston,* 922 F.2d 1183, 1189 (5th Cir.1991); *Bodzin v. City of Dallas,* 768 F.2d 722, 724 (5th Cir.1985).

Maier was arrested on a charge of obstruction of justice pursuant to the Louisiana Statute on Obstruction of Justice ("Obstruction statute"), LSA R.S. 14:130.1, which makes it a crime to impede law enforcement in certain circumstances and with specific intent:

> A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as hereinafter described:
>
>> (2) *Using or threatening force* toward the person or property of another with the *specific intent* to:
>>
>>> (a) Influence the testimony of any person in any criminal proceeding;
>>> (b) Cause or induce the withholding of testimony or withholding of records, documents, or other objects from any criminal proceeding;
>>>
>>> © Cause or induce the alteration, destruction, mutilation, or concealment of any object with the specific intent to impair the object's integrity or availability for use in any criminal proceeding;
>>>
>>> (d) Evade legal process or the summoning of a person to appear as a witness or to produce a record, document, or other object in any criminal proceeding;
>>>
>>> (e) Cause the hindrance, delay, or prevention of the communication to a peace officer, as defined in R.S. 14:30, of information relating to an arrest or potential arrest or relating to the commission or possible commission of a crime or parole or probation violation. (*Id.*)(*emphasis added*)

Defendants argue that under Louisiana law, LSA-R.S. 46: 2140,[2] Officer Morel and Sergeant Green have an absolute duty and obligation to immediately respond to a report of domestic violence. (*Defendants' Motion,* pp. 4-5). By barring access to the Victim and threatening a lawsuit if the police officers attempted to speak with the Victim, defendants charge that Maier "hindered and delayed" the police officers from performing their statutory duty to investigate the crime and arrest the assailant, as well as notify the Victim of her rights and the availability of a protective order and community assistance. (*Id.*). Defendants position is that Sergeant Green believed Maier's actions constituted obstruction of justice pursuant to LSA R.S. 14:130.1 and there was probable cause to effectuate arrest of Maier for the same. (*Id.* at 6). Most significantly, defendants point to the fact that Judge Phillis Keaty independently found that probable cause existed for Maier's arrest and signed a warrant authorizing such based on a review and approval of the submitted affidavit. (*Id.,* see Exhibits

---

[2] LSA-R.S. 46:2140.A provides in pertinent part:
> Whenever a law enforcement officer has reason to believe that a family or household member or dating partner has been abused, the officer shall immediately use all reasonable means to prevent further abuse, including: (1) *Arresting the abusive party* with a warrant or without a warrant pursuant to Code of Criminal Procedure Article 213, if probable cause exists to believe that a felony has been committed by that person, whether or not the offense occurred in the officer's presence.(2) Arresting the abusive party in case of any misdemeanor crime which endangers the physical safety of the abused person whether or not the offense occurred in the presence of the officer. If there is no cause to believe there is impending danger, arresting the abusive party is at the officer's discretion.(3) *Assisting the abused person in obtaining medical treatment* necessitated by the battery; *arranging for, or providing, or assisting in the procurement of transportation for the abused person to a place of shelter or safety*. (4) *Notifying* the abused person of his *right to initiate criminal or civil proceedings; the availability of the protective order*, R.S. 46:2136; and the availability of *community assistance* for domestic violence victims.

B&C).

Plaintiff claims that she never threatened nor *physically* prevented the police officers from going into the treatment room to see the Victim, which plaintiff argues is essential under the Obstruction statute. (*Plaintiff's Opposition,* p.3). Relying solely on the deposition of Morgan Green, plaintiff posits that "nothing happened in the Hospital that night even approaching probable cause for Obstruction charges under 14:120.1: no violence, no threats. The only thing that happened was a Social Worker followed the Standard of Care and Regulations duly promulgated under Federal Law and known as HIPAA." (*Id.,* Exhibit A). Plaintiffs states that although Green may have deemed her conduct "unprofessional," it was not such that would give Green probable cause to believe she committed the offense of obstruction of justice. She accuses that Green must have had some ulterior reason "unrelated to law enforcement" for arresting Maier.

To determine the presence or absence of probable cause, the totality of the circumstances surrounding the arrest must be considered. *See Ornelas v. United States,* 517 U.S. 690, 696-97, (1996); *United States v. Maslanka,* 501 F.2d 208, 212 (5th Cir.1974), *cert. denied,* 421 U.S. 912 (1975). "[P]robable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." *Fields v. City of South Houston,* 922 F.2d 1183, 1189 (5th Cir. 1991) (quoting *Illinois v. Gates,* 462 U.S. 213, 232,(1983)). Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability that criminal activity has

occurred. *See Hart,* 127 F.3d at 444; *see also United States v. Brown,* 941 F.2d 1300, 1302 (5th Cir.), *cert. denied,* 502 U.S. 1008 (1991).

Defendants rely on the fact that the police officers had probable cause and a valid arrest warrant based on a finding of the same by an independent intermediary to arrest Maier, therefore there is no basis for a lawsuit against them. "Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest." *Rodriguez v. Ritchey*, 556 F.2d 1185 (5th Cir. 1977); *see Baker v. McCollan,* 443 U.S. 137, 139 (1979); *Simon v. United States*, 644 F.2d 490 (5th Cir. 1981); *Smith v. Gonzales,* 670 F.2d 522, 526 (5th Cir.), *cert. denied,* 459 U.S. 1005 (1982). "[U]ndisputed evidence that an arrest was effectuated under a facially valid arrest warrant satisfies the Fourth Amendment prerequisites and forecloses a §1983 claim for false arrest." *Casanova v. City of Brookshire,* 119 F.Supp.2d 639, 652 (S.D.Tex.,2000)(citing *Baker,* 443 U.S. at 139; *Rykers v. Alford,* 832 F.2d 895, 898 (5th Cir.1987); *Smith v. Gonzales,* 670 F.2d 522, 526 (5th Cir.), *cert. denied,* 459 U.S. 1005 (1982)). "Such an arrest is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to state a claim." *Thomas v. Sans,* 734 F.2d 185, 190-91 (5th Cir. 1984).

Regardless of plaintiff's allegations that "nothing happened in the Hospital that night even approaching probable cause for Obstruction charges" and that defendants had an ulterior motive for the arrest, the defendants' actions and determination that probable cause existed was affirmed by Judge Keaty's review of the facts and subsequent decision to issue a

warrant based on a finding of probable cause.  As it were, "[T]he determination of whether an officer has probable cause to arrest requires an exercise of his discretion. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials--like other officials who act in ways they reasonably believe to be lawful--should not be held personally liable." *Anderson v. Creighton,* 483 U.S. 635, 641 (1987) (citing *Malley v. Briggs,* 475 U.S. 335, 344-45 (1986)(internal citations omitted)). Considering the facts in the light most favorable to the plaintiff, the Court finds, based on the circumstances leading up to the procurement of the warrant and surrounding plaintiff's arrest, the police officers were not unreasonable in believing that there was probable cause to arrest Maier for obstruction, and in fact the Court finds that there is no genuine issue of material fact that the police officers had probable cause to arrest Maier.

      Plaintiff's allegation that the broken causation rule does not shield defendants from liability because defendants acted in bad faith in procuring the warrant and failed to inform Judge Keaty of all material facts does not allow her to defeat summary judgment.  The "broken causation rule" is well established in the Fifth Circuit: "[i]f facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Murray v. Earle* 405 F.3d 278, 292 (5th Cir.2005)(citing *Taylor v. Gregg,* 36 F.3d 453, 456 (5th Cir.1994); *United States v. Causey,* 818 F.2d 354 (5th Cir.1987), *Rykers v. Alford,* 832 F.2d 895, 898 (5th Cir.1987)*; Rodriguez v. Ritchey,* 556 F.2d 1185, 1193 (5th

Cir.1977)(en banc), *cert. denied,* 434 U.S. 1047 (1978)).  A police officer may even be entitled to qualified immunity where the officer's decision to seek a warrant was without sufficient probable cause or it was improperly motivated as long as the officer's error or malicious motive did not lead him to withhold any relevant information or misdirect the independent judiciary. *Hand v. Gary,* 838 F.2d 1420, 1427 (5th Cir.1988); *Taylor,* 36 F.3d at 456-57; *Smith v. Gonzales,* 670 F.2d 522, 526 (5th Cir.1982)(holding that an officer who acted with malice in procuring a warrant or an indictment was not liable where the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's "independent" decision "breaks the causal chain" and insulates the initiating party).

However, the mere issuance of a warrant by a judge on review of a warrant application does not automatically relieve the individual officers from liability. "[A]n official who maliciously seeks to obtain a facially valid warrant should not be absolved of liability simply because he succeeded." *Hand v. Gary,* 838 F.2d 1420, 1427 (5th Cir.1988); *see Malley v. Briggs,* 475 U.S. 335, 344 n. 7 (1986).  The broken causation rule will not apply and the intermediary's decision will not break the chain of causation and so shield the officers from liability where "the deliberations of that intermediary were in some way tainted by the actions of the [defendants]." *Shields v. Twiss,* 389 F.3d 142, 150 (5th Cir.2004)*; Gordy v. Burns,* 294 F.3d 722, 728 (5th Cir.2002)(reaffirming *Hand v. Gary,* 838 F.2d 1420, 1427,1428 (5th Cir.1988)([T]he chain of causation is broken only where all the facts are presented to the ... independent intermediary, where the malicious motive of the law

13

enforcement officials does not lead them to withhold any relevant information from the independent intermediary. Any misdirection of the magistrate...by the omission or commission perpetuates the taints of the original behavior.)).

Obviously the fact that plaintiff accuses the police officers of having some malicious motive for seeking her arrest does not automatically make it so or mean that the officers were led to withhold relevant information or testify falsely. Plaintiff has not submitted any evidence to support her allegations that the officers procured the arrest warrant by unlawful means, withheld relevant information, or provided false testimony. Moreover, plaintiff has not identified, and the Court has not found, any evidence in the record to indicate that Judge Keaty failed to hear or was other wise in any way prevented from hearing all of the relevant facts surrounding Maier's actions before deciding that there was probable cause to issue a warrant or that her deliberations "were in some way tainted by the actions of the defendants." See *Murray v. Earle,* 405 F.3d 278, 293 (5th Cir. 2005).

"A court may look beneath the face of the warrant and inquire into the truthfulness of any supporting affidavit because the Fourth Amendment demands a truthful factual showing of probable cause." *Hightower v. Schaubhut* 1990 WL 58129, 2-3 (E.D.La.1990). In comparing the undisputed facts presented in defendants' Motion and plaintiff's Opposition to the Affidavit presented to Judge Keaty, the Court does not find any evidence that material information or exculpatory evidence was withheld. Additionally, the fact that the District Attorney decided not to prosecute does not vitiate probable cause or the validity of the

warrant. "A warrant is valid even though the court, through lack of information or otherwise, has issued it for the arrest of a person in fact innocent of the offense alleged." *Rodriguez v. Ritchey,* 556 F.2d 1185, 1190 n. 21 (5th Cir.1977), *cert. denied,* 434 U.S. 1047(1978) (quoting Restatement (Second) of Torts § 123 cmt. a (1965)). "The Constitution does not guarantee that only the guilty will be arrested." *Baker,* 443 U.S. at 145.

Additionally, defendants not only deny plaintiff's allegation of ulterior motive or malicious purpose in deciding to execute the arrest at the hospital, but also argue that it is a largely irrelevant because "collateral bad motive" is immaterial.(*Defendants' Motion*, p.7). "Once probable cause is established, the arresting officers collateral bad motive is immaterial since the guilt of the arrestee is determined by a judicial officer, not by the law enforcement officer." (*Id.*)(*quoting Hunter v. Clardy,* 558 F2.d 290 (5th Cir. 1977)). Any bad faith motive on the part of the officers in wanting to "get back" at plaintiff is irrelevant if the arrest is supported by a properly issued warrant or by the existence of probable cause because the "arrest is constitutional in the first instance." *Hunter v. Clardy*, 558 F.2d 290, 292; *Rodriguez,* 556 F.2d 1185 (5th Cir.1977), *cert. denied,* 434 U.S. 1047 (1978). "Once a warrant is issued, or probable cause comes into existence, it becomes an officer's duty to arrest the suspect regardless of his personal feelings, good or ill, towards the suspect." *Perry v. Jones*, 506 F.2d 778, 780 (5th Cir. 1974). The mere fact that defendants executed the warrant at plaintiff's workplace, obviously in the presence of co-employees and supervisors does establish that defendants intended to embarrass, humiliate or harass plaintiff. Moreover, as evidenced by the facially valid arrest warrant, defendants certainly had lawful cause for

removing her, contrary to plaintiff's assertion. Plaintiff has not presented any evidence of unlawfulness on the part of defendants or that her arrest was effectuated in an unconstitutional manner.

Finally, Maier's claim that the police officers should have known that her actions were justified by HIPAA regulations and thus lacked probable cause has no basis in law or in fact. HIPAA prohibits hospital personnel from disclosing protected health care information to third parties.[3] It does not bar police officers from obtaining information related to a perpetrated crime directly from a patient nor does it prohibit hospital personnel from allowing police officers access to a patient who was a victim of a crime.[4] Defendants

---

[3] HIPAA provides a uniform reporting system for health service facilities and organizations and was designed, in part, to maintain control over federal dollars spent for medical services. In addition to establishing a reporting system. Sections 261 through 264 of HIPAA and 42 U.S.C. § 1320d-2 authorize the Secretary of Health and Human Services to promulgate regulations to protect the "privacy" of private health information of individuals. 42 U.S.C. §§ 1320d-1(d), 1320d-3(a)(b), 1320d-4(b). Among the regulations promulgated are those establishing national standards for the privacy of individually identifiable health information, referred to generally as the "Privacy Rule." 45 C.F.R. part 164, subpart E. These regulations prohibit "covered entities" - health plan, health care clearing house, health care provider who transmits any health information in electronic form in connection with a transaction covered by HIPAA - from disclosing a patients' medical records and certain protected health information. See "General Overview of Standards for Privacy of Individually Identifiable Health Information," *available at* http://www.hhs.gov/ocr/hipaa/guidelines/overview.pdf

[4] It is worth noting that although this exact issues is not addressed, under the "HHS Questions and Answers, FAQs on Privacy of Health Information/HIPAA Disclosures in Emergency Situations," the U.S. Department of Health and Human Services explains that in cases of imminent danger "Providers can share patient information with anyone as necessary to prevent or lessen a serious and imminent threat to the health and safety of a person or the public -- consistent with applicable law and the provider's standards of ethical conduct." (*Available at* http://answers.hhs.gov). Considering the seriousness of domestic violence offenses in general and the substantial injuries that this Victim suffered, allegedly at the hands of her husband, and the fact that the Victim, at time of discharge, was released to the care of her husband, the Court finds

16

provide the deposition testimony of Maier to show that she could not identify any HIPAA provision that would prohibit a police officer from asking a patient who is a victim of a crime to identify the perpetrator of the crime (*Defendants' Motion,* pp. 8-9). Instead, Maier stated that the nurse who called the police to report the domestic abuse incident violated HIPAA and the Victim's confidentiality. (*Id.*). Maier apparently believed her actions were necessary to prevent further injury and protect the Victim's right to confidentiality after this breach, however her belief that her actions were justified or somehow defensible because she was attempting to act in compliance with HIPAA regulations is immaterial.

> As defendants argue,
>
> [n]othing in the law requires Officer Borel and Sergeant Green to research every law, statute, rule and regulation and determine whether a person does or does not have a valid defense to a criminal charge. That is the role of a judge and/or jury. All officer Borel and Sergeant Green are required to do are submit facts to a judicial officer who can then determine whether probable cause exists to believe a person has committed a crime." (*Defendants' Motion,* p.10).

Plaintiff's actions were based on an obvious misconstruction of the provisions of HIPAA. Moreover, her mistaken belief, even if sincere, that her actions were not only justified but required under HIPAA is immaterial for the purpose of the instant motion. Regardless of

---

this explanation appropriate.

plaintiff's understanding of HIPAA, based on plaintiffs actions the defendants had probable cause to arrest Maier for obstruction of justice.

The undisputed fact remains that on information and belief that probable cause existed, the police officers submitted an affidavit to Judge Keaty who independently determined that probable cause existed and that an arrest warrant should be issued. The Court finds that plaintiff has not established her summary judgment burden or the elements of a viable false arrest claim. Plaintiff has not provided competent summary judgment evidence or advanced any argument to create a genuine issue of material fact that defendants lacked probable cause to arrest Maier in spite of the fact that a warrant issued or that the warrant was invalid. Defendants are entitled to qualified immunity and summary judgment as a matter of law. For the reasons stated and because probable cause and a facially valid warrant existed for the issuance of the warrant, plaintiff's §1983 claims must be dismissed.

### IV. CONCLUSION

There is a maxim that may be as old as time, "to those who much is given, much is expected." The plaintiff, likely through her own efforts and diligence, has obtained a law degree and now seeks to become admitted as a member of the Louisiana State Bar Association. This Court truly hopes that the lesson plaintiff may learn as a result of her obvious misunderstanding of Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996) and the actions she took based on that mistaken belief to be a lesson not so cheaply learned that will serve to her benefit when

she is admitted to the bar and that she will remember to exercise the power that comes with being an attorney judiciously.

Based on the record before the Court and the reasons stated herein, defendant is entitled to summary judgment. Accordingly, defendants' Motion for Summary Judgment [Rec. Doc. 8] will be GRANTED, and plaintiff's claims asserted against them will be DISMISSED.